# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                             Case No. 06-CR-336

**KAYLA LAPP**
    **Defendant.**

## SENTENCING MEMORANDUM

Defendant Kayla Lapp pleaded guilty to use of a telephone to facilitate a drug trafficking offense, contrary to 21 U.S.C. § 843(b), and I set the case for sentencing. In imposing sentence, the district court must first calculate and consider the sentence recommended by the advisory sentencing guidelines. Then, to ascertain the actual sentence, it must apply the criteria set forth in 18 U.S.C. § 3553(a) to the facts and circumstances of the defendant's particular case. E.g., United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008).

### I. GUIDELINES

Defendant's pre-sentence report ("PSR") set a base offense level of 20, U.S.S.G. § 2D1.1(c)(10), then subtracted 3 levels for acceptance of responsibility, § 3E1.1, for a final level of 17. It then assessed a criminal history category of II, producing an imprisonment range of 27 to 33 months. I found these calculations correct and adopted them without objection.

### II. SENTENCE

**A.    Section 3553(a) Factors**

Section 3553(a) directs the court to consider:

(1)    the nature and circumstances of the offense and the history and

>    characteristics of the defendant;
>
> (2) the need for the sentence imposed–
>
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>    (B) to afford adequate deterrence to criminal conduct;
>
>    (C) to protect the public from further crimes of the defendant; and
>
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the advisory guideline range;
>
> (5) any pertinent policy statements issued by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). After considering these factors, the court must impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing set forth in § 3553(a)(2). This so-called "parsimony provision" represents the "overarching" command of the statute. Kimbrough v. United States, 128 S. Ct. 558, 570 (2007).

The district court must give respectful consideration to the guidelines in determining the sentence, Gall v. United States, 128 S. Ct. 586, 594 (2007), but it may not presume that the guideline sentence is the correct one, Rita v. United States, 127 S. Ct. 2456, 2465 (2007). The guidelines "are but one factor among those listed in 18 U.S.C. § 3553(a)," United States v. Carter, 530 F.3d 565, 578 (7th Cir. 2008), and "§ 3553(a)(3) directs the judge to consider sentences other than imprisonment," Gall, 128 S. Ct. at 602.

2

**B.     Analysis**

**1.     Nature of Offense and Character of Defendant**

This prosecution arose out of a government investigation of a large-scale cocaine distribution organization in the Waukesha, Wisconsin area, headed by Javier Aguilera. The PSR summarized the extensive activities of the organization and its other members in ¶¶ 9-81, but defendant's role was quite limited: she allowed Aguilera, a friend of her former boyfriend, to store cocaine at her residence. Aguilera also used defendant's residence to weigh and package cocaine. Law enforcement intercepted drug-related calls between Aguilera and defendant pursuant to a Title III wiretap order, and the specific count of conviction pertained to a July 31, 2006 call in which the two discussed the cocaine and scale Aguilera had at defendant's place, which Aguilera wanted to acquire to complete a deal. Defendant admitted that she allowed Aguilera to use her residence to store cocaine, stating that she got involved with the wrong group of people because she thought Aguilera was a friend. The parties agreed that defendant should be held responsible for a total of 200-300 grams of cocaine.

Defendant was just twenty-one years old at the time of sentencing, nineteen at the time she committed the offense. She compiled a bit of a record before this case, although nothing terribly serious: juvenile disorderly conduct, retail theft and battery adjudications; and an adult criminal damage to property case. This was her first felony.

Defendant described a good childhood in an intact family, yet she began making bad choices in associates in her teen years. Defendant had two children, ages three and one and a half, and the father of the first was in prison, while the father of the second (Aguilera's friend) was murdered. The PSR stated that defendant was diagnosed with Attention Deficit Disorder

3

("ADD") as a teen, and she admitted some anger issues, which likely contributed to her earlier scrapes with the law. I found that those issues should be addressed to ensure that she made better choices in the future.

Defendant's mother stated that since her arrest in this case, defendant disassociated herself from her former crowd and was making better choices for herself and her kids. Defendant admitted some use of controlled substances in the past, but no recent use, and all screens on pre-trial release were negative. Defendant managed to graduate high school, despite her difficulties, and she worked at a daycare center for about a year and a half before the place closed in November 2007 and she was laid off. Since then, she cleaned condominiums for her father. She further planned to continue her education in WCTC's cosmetology program after completion of this matter.

## 2. Guidelines and Purposes of Sentencing

As noted above, the guidelines recommended 27-33 months in prison, but I found that range greater than necessary to satisfy the purposes of sentencing under the specific circumstances presented here. First, I found the range greater than necessary to provide just punishment given defendant's specific conduct. See 18 U.S.C. § 3553(a)(2)(A). Defendant did not deal cocaine herself; she simply allowed Aguilera to store it in her apartment. It appeared that she eventually gave him a key so he could retrieve what he wanted and would stop pestering her to get in. The July 31 phone call revealed her exasperation at his desire to quickly retrieve what he had left there. I also considered the fact that she became associated with Aguilera through her former boyfriend, the father of her second child, who introduced them. Aguilera helped defendant financially after the boyfriend was killed, which likely caused defendant to feel some gratitude, albeit misplaced. So far as the record showed, defendant's

4

profit from her involvement in cocaine was minimal.

Second, I found the guideline range greater than necessary to protect the public and deter future offenses. See 18 U.S.C. § 3553(a)(2)(B) & (C). Defendant's record was, as discussed above, minimal, mostly petty offenses resulting from anger issues and poor choices in acquaintances. I also considered the fact that she cut her negative ties and had been doing better for the past year or so; she took full responsibility for her conduct and attempted to cooperate with the government, demonstrating a further commitment to better behavior in the future. Therefore, I concluded that prison was not needed to protect the public. Rather, the public could be protected and defendant adequately deterred by close supervision in the community.[1]

Third, I found that defendant's correctional treatment needs were best served in the community. See 18 U.S.C. § 3553(a)(2)(D). Because none of the other purposes of sentencing required prison, I also took into account the fact that defendant's children would obviously be better served by allowing defendant to remain in the community.

Under all of the circumstances, I found a sentence of three years probation with a condition of six months home confinement sufficient but not greater than necessary. The home confinement provided a measure of punishment and structure, and close monitoring by a federal probation officer would ensure that defendant stayed on the right track and addressed

---

[1] As I advised defendant at the sentencing hearing, any violation of her conditions of probation in this case could lead to revocation and imposition of the full four year term available under 18 U.S.C. § 843(b). See United States v. Roque, 536 F. Supp. 2d 987, 991 (E.D. Wis. 2008) (noting that unlike with supervised release, a court imposing sentence after revocation of probation may impose any sentence that might originally have been imposed). I further advised defendant that I would have little inclination to leniency should she squander the chance I gave her with this sentence.

5

her treatment issues. This sentence fell below the guidelines, but I carefully considered those guidelines, and under the circumstances of this case I found a non-guideline sentence appropriate; any disparity with others convicted of similar crimes was not unwarranted. See 18 U.S.C. § 3553(a)(6); see also Gall, 128 S. Ct. at 599 ("Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities.").

### III.  CONCLUSION

Therefore, I placed defendant on probation for three years. As conditions, I ordered her to participate in drug testing and treatment, mental health treatment, the cognitive intervention program, and to serve 180 days of home confinement on electronic monitoring. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 22nd day of August, 2008.

/s Lynn Adelman

_____

LYNN ADELMAN
District Judge